IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JEFFREY D. BEAVER,<br><br>　　　　Petitioner,<br>　vs.<br><br>LEROY KIRKEGARD; TIM FOX, ATTORNEY GENERAL OF THE STATE OF MONTANA; and THE MONTANA DEPARTMENT OF CORRECTIONS,<br><br>　　　　Respondents. | Cause No. CV 17-36-GF-BMM-JTJ<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

This matter is before the Court on Jeffrey D. Beaver's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. Beaver is not currently in custody and is proceeding pro se.

Rule 4 of the Rules Governing Section 2254 cases provides in pertinent part:

> If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

Based upon a review of Beaver's Petition and Memorandum (Docs. 1, 1-1), as well as the state court decisions referenced herein, it appears that the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976), bars this Court from considering Beaver's claim.

1

### A. Factual and Procedural Background

On August 12, 2014, Beaver's commercial vehicle was stopped by an officer of the Motor Carrier Services Division of the Montana Department of Transportation for the purpose of conducting a safety inspection. *See generally State v. Beaver*, 2016 MT 332, 386 Mont. 12, 385 P. 3d 956, ¶¶3-4, 11. Following the initial stop, the officer detected the odor of alcohol from Beaver and observed alcoholic cans and bottles in the vehicle. *Id*. Beaver submitted to a portable breath test which indicated Beaver's breath alcohol concentration (BAC) was above .08. *Id*. The MDT officer requested the assistance of the Montana Highway Patrol. *Id*. A highway patrol officer arrived on scene and conducted the standard field sobriety tests. *Id*. A second breath test showed Beaver's BAC to be over .160. A search warrant was obtained for Beaver's blood sample; the sample revealed a BAC of .239. *Id*. Beaver was subsequently charged with DUI and other misdemeanor offenses. *Id*.

Beaver apparently filed a motion seeking to suppress the evidence that was gathered after the MDT officer stopped him. *Id*. The motion was denied. *Id*. In January 2015, Beaver had a bench trial before the Teton County Justice Court. *Id*. Beaver was found guilty of aggravated driving under the influence. *Id*. at ¶5. Beaver appealed to the Teton County District Court and renewed his motion to suppress. *Id*. The District Court denied the motion. Beaver then entered a guilty

plea to the DUI charge and reserved his right to appeal the denial of the motion to suppress. *Id*. at ¶6.

On appeal, Beaver argued that the trial court erred in upholding the stop and warrantless search of Beaver's freightliner by the MDT officer. *Id*. The Montana Supreme Court determined the MDT officer did not need a fact-based particularized suspicion to stop the vehicle, as usually required by MCA § 46-5-401, because Beaver was operating a commercial vehicle subject to close regulation by law. *Id*. at ¶10.

The Court began by noting that the Fourth Amendment's prohibition of unreasonable searches and seizures applies to both commercial premises and private homes and applies to searches by police officers as well as to "administrative inspections designed to enforce regulatory statutes." *Id*. at ¶ 12, (citing *New York v. Burger*, 482 U.S. 691, 699 (1987)). Yet, the Court observed, an individual's expectation of privacy in commercial premises is less than the expectation an individual would have in his own home. *Id*. Those individuals working in closely regulated industries are subject to significant oversight and the law provides there is "no reasonable expectation of privacy." *Id*. (citing *Burger*, 482 U.S. at 700). The rationale behind the "lessened application" of the Fourth Amendment pursuant to a governmental search to closely regulated industries stems from the weakened privacy interests of the owners and the government's

3

concomitant heightened interest in regulation. *Id*. at ¶13; *Burger*, at 702. Thus, a warrantless governmental action is deemed reasonable if "there is a substantial governmental interest in the applicable regulatory scheme; if warrantless inspections are necessary to further the regulatory scheme, and if the regulatory scheme advises affected persons that the inspection is made pursuant to law which properly defines its scope." *Id*. (citing *Burger*, 482 U.S. at 702-02). The Court also noted that the Ninth Circuit has concluded commercial trucking is a closely regulated enterprise subject to the rule of *Burger*. *Id*. (citing *U.S. v. Delgado*, 545 F. 3d 1195, 1201 (9th Cir. 2008)).

Applying this precedent to Montana law, the Court determined it was clear that commercial trucking is a closely regulated enterprise in Montana. *Id*. As to the first *Burger* prong, the Court observed commercial trucking is pervasively regulated and is subject to extensive federal oversight and to comprehensive and detailed state regulations. *Id*. at ¶14. Under state law the MDT is authorized to adopt safety standards for commercial vehicles which must substantially comply with federal regulations. *Id*. at ¶15. The MDT has adopted detailed regulations applicable to commercial trucking, including those which cover roadside inspection of commercial motor vehicles to ensure compliance with both federal and state safety requirements. *Id*. Montana law also requires the MDT to coordinate with the Montana Highway patrol for enforcement of these standards.

4

*Id*. Yet, MDT officers are authorized, by law, to also issue citations, make arrests for violations of safety standards, and make reasonable inspections of commercial cargo. *Id*. These same officers are also able to enforce federal regulations, which include making "reasonable safety inspections of commercial vehicles." *Id*.

The Court also found it to be clear under state law that warrantless inspections of commercial vehicles are necessary to enforce various size and load regulations of the commercial trucking industry. *Id*. at ¶ 16. Further, the regulations are aimed at ensuring the safety of both the motoring public, as well as those engaged in commercial trucking. Thus, under the second prong of *Burger*, the Montana Supreme Court determined warrantless searches to be necessary and that they served a substantial governmental interest. *Id*.

Finally, the Court found it to be evident that those in the industry are on notice that they are subject to inspections to determine compliance with statutes and regulations. *Id*. at ¶ 17. The adoption of the statutes and regulations provide "clear notice that there are extensive requirements applicable to commercial trucking activities, and that those activities are subject to inspection to ensure compliance." *Id*.

In sum, the Court held the commercial trucking industry to be a closely regulated activity. Further, the Court held Montana's regulatory scheme to be compliant with the notice and focus requirements of *Burger*. *Id*. at ¶18. Thus, the

5

Court found the MDT officer was authorized to stop Beaver without a warrant or particularized suspicion. *Id*. Once the officer detected evidence indicating Beaver may have been under the influence of alcohol, as a matter of public safety, the officer was able to engage further investigation and contact the Highway Patrol for assistance. *Id*. Additionally, the Court observed that following the initial stop, evidence of Beaver's alcohol consumption was in the MDT officer's plain view and could be seized and used in the prosecution. *Id*. (citations omitted). The Court determined the MDT officer acted legally in stopping Beaver and that the evidence of the DUI was properly obtained. *Id*. Beaver's conviction was affirmed. *Id*.

### B. Beaver's Claim

Beaver claims that the Montana Supreme Court unreasonably applied the third prong of *Burger* to his case by altering the prong itself. (Doc. 2 at 3-4.) Beaver argues that the Court essentially replaced this prong with its own "clear notice" test in violation of Supreme Court precedent which, according to Beaver, requires a "constitutionally adequate substitute for a warrant." (*Id*. at 6.) Beaver argues the Montana Supreme Court failed to analyze whether or not Montana's inspection regulation provides a permissible warrant substitute and that this modified third prong does not set out the requisite limits on the time, place, and scope of inspections. (*Id*. at 8-10.) Thus, Beaver asserts the search and subsequent seizure that occurred in his case was violative of the Fourth Amendment.

### C. Analysis

In *Stone*, the Court held "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494. The only inquiry this Court can make is whether petitioner had the opportunity to litigate his claim, not whether petitioner did in fact litigate or even whether the court correctly decided the claim. See, *Otriz-Sandoval v. Gomez*, 81 F. 3d 891, 899 (9th Cir. 1996).

As set out above, Beaver had a full and fair opportunity to litigate this claim. Beaver, through counsel, filed a suppression motion in the Teton County Justice Court. After his motion was denied, Beaver proceeded to a bench trial and was convicted. Beaver filed a notice of appeal and had de novo proceedings in the district court. Beaver renewed his suppression motion which was again denied. Beaver then plead guilty to the offense of Aggravated DUI and reserved his right to appeal the suppression issue. Beaver then filed a direct appeal with the Montana Supreme Court. As explained herein, the Court applied Montana law and looked to federal law and regulations to determine that commercial trucking was a closely regulated industry in Montana. The Montana Supreme Court affirmed the denial

7

of Beaver's suppression motion. In sum, Beaver was provided three separate opportunities to litigate his Fourth Amendment claim. While Beaver claims the Montana Supreme Court erred in its ultimate ruling, he does not argue that the proceeding provided to him were inadequate.

Thus, Beaver does not argue that the state court proceedings were unfair, just that the three courts each reached the wrong decision. "As in *Stone* itself, all we have is a claim of error- and that is not enough to support collateral relief based on the exclusionary rule." *Newman v. Wengler*, 790 F. 3d 876, 881 (9th Cir. 2015) (per curiam) (citing *Hampton v. Wynat*, 296 F. 3d 560, 563 (7th Cir. 2002)). It is not for this Court to weigh in on whether or not the state court decisions were correctly decided. The only consideration to be made here is whether adequate opportunity was afforded to Beaver. Because Beaver had a full and fair opportunity to litigate his Fourth Amendment claim in the state court, the doctrine of *Stone v. Powell* bars his federal habeas claim.

### D. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C.. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the

8

district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

A certificate of appealability should be denied because there is no doubt that Beaver had a full and fair opportunity to litigate his Fourth Amendment claim and there is no basis to encourage further proceedings at this time.

Based on the foregoing, the Court makes the following:

## RECOMMENDATION

1. Mr. Beaver's Petition (Doc. 1) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter, by separate document, a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Beaver may object to this Findings and Recommendation within 14 days.[1] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

---

[1] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.

<u>Mr. Beaver must immediately notify the Court of any change in his mailing address</u> by filing a "Notice of Change of Address." Failure to do so may result in dismissal of this action without notice to him.

DATED this 25th day of April 2017.

<u>/s/ John Johnston</u>
John Johnston
United States Magistrate Judge